## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAUL H. MARTIN, III and | : | |
| TRAVELERS INDEMNITY CO. OF | : | |
| AMERICA, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | C.A. No. 07-363 (GMS) |
| v. | : | |
| | : | TRIAL BY JURY DEMANDED |
| ANDREAS STIHL AG & CO. KG, | : | |
| STIHL INC., and UNITED RENTALS, | : | |
| INC., | : | |
| | : | |
| Defendants. | : | |

### STIHL INCORPORATED AND ANDREAS STIHL AG & CO. KG'S
### MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

Defendants Stihl Incorporated and Andreas Stihl AG & Co. KG ("Andreas Stihl")

(collectively "Stihl Defendants"), by and through their counsel, move this Court to

dismiss Plaintiffs' claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ.

P. 12(b)(1). In support of their motion, the Stihl Defendants state as follows:

### STATEMENT OF FACTS

Plaintiffs filed this product liability action on June 8, 2007, in this Court against

the Stihl Defendants and Co-Defendant United Rentals, Inc. ("United Rentals").

Plaintiffs are Paul Martin, an employee of George & Lynch, Inc., and Travelers Insurance

Company ("Travelers"), the insurance company that allegedly provided worker's

compensation insurance to Plaintiff's employer. Complaint ¶¶ 2-4. In their Complaint,

Plaintiffs allege that Martin was injured during the course of his employment while using

a Stihl TS 400 cutting-off machine that was designed, manufactured and sold by the

Defendants. Plaintiffs allege that while Martin was using the TS 400, the machine kicked

1

back and struck him in the face, causing injuries to his face, nose, mouth and chin.

Complaint ¶ 23. On information and belief, Martin was using the machine with an

unauthorized cutting attachment for cutting wood at the time of the accident. Plaintiffs

have asserted negligence and breach of warranty claims against all Defendants arising

from the design, manufacture and sale of the TS 400 cutting-off machine, and in addition,

against United Rentals arising from the sale of the cutting attachment.

According to the Complaint, Plaintiff Martin is a citizen of Delaware. Complaint

¶ 1. Plaintiff Travelers is alleged to be a Minnesota corporation with its principal place

of business in Minnesota, and is therefore a Minnesota citizen. Complaint ¶ 3. United

Rentals is a Connecticut corporation with its principal place of business in Connecticut,

and is therefore a Connecticut citizen. Complaint ¶ 13. Andreas Stihl is a German

company, not a corporation, and it is not a citizen of any U.S. state. Andreas Stihl's

principal place of business is located in Waiblingen, Germany. Complaint ¶ 6.

Plaintiffs have not alleged Stihl Incorporated's corporate citizenship correctly,

however. Plaintiffs have claimed erroneously that Stihl Incorporated is a Virginia

corporation with its principal place of business in Virginia Beach, Virginia. Complaint ¶

7. While Stihl Incorporated does have its principal place of business in Virginia, it is

incorporated in Delaware. See Affidavit of Karl Angler, attached as Exhibit 1.

Therefore, Stihl Incorporated is also a citizen of Delaware, as is Plaintiff Martin, and

there is no diversity of citizenship in this case for purposes of establishing federal subject

matter jurisdiction.

**ARGUMENT**

A federal court has subject matter jurisdiction based on diversity of citizenship when the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. §1332 (2005). Plaintiffs allege in their Complaint that this Court has subject matter jurisdiction in this case because there is diversity of citizenship between the parties and the amount in controversy is satisfied. Complaint ¶ 18. This allegation, however, is predicated upon the inaccurate assertion that Stihl Incorporated is a Virginia corporation when, in fact, it is a Delaware corporation. See Exhibit 1. Because Plaintiff Martin and Defendant Stihl Incorporated are both Delaware citizens, diversity of citizenship is lacking and this Court does not have subject matter jurisdiction over this action.

The party asserting diversity jurisdiction bears the burden to prove diversity by a preponderance of the evidence. Capoferi v. Capoferi, 2007 U.S. Dist. LEXIS 18220, *4-5 (D. N.J. March 15, 2007) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)[1]; Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004)). For a federal court to have subject matter jurisdiction, diversity of citizenship must exist at the time the Complaint was filed. Id. (citing Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972) ("It is the citizenship of the parties at the time the action is commenced which is controlling.")). In this case, Stihl Incorporated is a Delaware corporation and was at the time Plaintiffs filed their Complaint.

---

[1] Unreported opinions are attached hereto as Exhibit 2.

A motion to dismiss under Federal Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint due to lack of subject matter jurisdiction. Floyd v. Saturn of Newark, 2006 U.S. Dist. LEXIS 2466, *4-5 (D. Del. January 24, 2006) (citing Coxson v. Comm. of Pennsylvania, 935 F. Supp. 624, 626 (W.D. Pa. 1996) (citations omitted)). A motion to dismiss under 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. Id. (citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). In the instant case, Plaintiffs' Complaint is incorrect on its face in its assertion that Stihl Incorporated is a Virginia corporation and that there is diversity of citizenship of the parties. Accordingly, this Court must dismiss this action pursuant to Rule 12(b)(1) since subject matter jurisdiction is lacking.

**CONCLUSION**

Plaintiff Paul Martin and Defendant Stihl Incorporated are both citizens of

Delaware.  Because there is no diversity of citizenship to confer subject matter

jurisdiction over this action pursuant to 28 U.S.C. § 1332, the Stihl Defendants move this

Court to dismiss this case in its entirety.

**MARON MARVEL BRADLEY & ANDERSON, P.A.**

/s/ Paul A. Bradley
Paul A. Bradley (DE ID No. 2156)
1201 North Market Street, 9th Floor
P.O. Box 288
Wilmington, Delaware  19899-0288
(302) 425-5177 (phone)
(302) 425-0180 (fax)
pab@maronmarvel.com
Attorney for Defendants
Andreas Stihl AG & Co. KG
and Stihl Incorporated

Dated:  October 2, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PAUL H. MARTIN, III and                          :
TRAVELERS INDEMNITY CO. OF          :
AMERICA,                                                 :
                                                               :
     Plaintiffs,                                        :
                                                               :    C.A. No. 07-363 (GMS)
     v.                                                    :
                                                               :    TRIAL BY JURY DEMANDED
ANDREAS STIHL AG & CO. KG,             :
STIHL INC., and UNITED RENTALS,       :
INC.,                                                        :
                                                               :
     Defendants.                                     :

Pursuant to Rule 7.1.2, Defendants Andreas Stihl AG & Co. KG and Stihl

Incorporated hereby give notice that they waive their right to file an opening brief in

relation to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and rely on the

content of their Motion.

**MARON MARVEL BRADLEY**
**& ANDERSON, P.A.**

/s/ Paul A. Bradley
Paul A. Bradley (DE Bar ID #2156)
1201 N. Market Street, Suite 900
P.O. Box 288
Wilmington, DE 19899
(302) 428-0180 (fax)
pab@maronmarvel.com
Attorney for Defendants
Andreas Stihl AG & Co. KG and
Stihl Incorporated

Date: October 2, 2007

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PAUL H. MARTIN, III and TRAVELERS INDEMNITY CO. OF AMERICA, | : : : : | |
| Plaintiffs, | : : | C.A. No. 07-363 (GMS) |
| v. | : : | TRIAL BY JURY DEMANDED |
| ANDREAS STIHL AG & CO. KG, STIHL INC., and UNITED RENTALS, INC., | : : : : | |
| Defendants. | : | |

## <u>AFFIDAVIT OF KARL ANGLER</u>

The affiant, Karl Angler, being duly sworn according to law, deposes and says:

1.     My name is Karl Angler.  I am the Vice President of Finance at Stihl Incorporated.

2.     Stihl Incorporated is a Delaware corporation with its principal place of business in Virginia Beach, Virginia.

Further, affiant sayeth not.

_____
Karl Angler

STATE OF VIRGINIA

CITY OF VIRGINIA BEACH

SWORN TO AND SUBSCRIBED before me, Notary Public, on this $27th$ _____ day of September, 2007.

*Doris E. Doebler*
Notary Public

My commission expires:   $1/31/2009$

\4800043.1

EXHIBIT 2

LEXSEE 2007 US DIST LEXIS 18220

**CANDACE J. CAPOFERI, Plaintiff, v. ROBERT CAPOFERI, et als., Defendants.**

**Civil No. 04-4716 (RBK)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2007 U.S. Dist. LEXIS 18220*

**March 15, 2007, Decided**

**NOTICE:** [*1] NOT FOR PUBLICATION

**PRIOR HISTORY:** *Capoferri v. Capoferri, 2005 U.S. Dist. LEXIS 37083 (D.N.J., July 1, 2005)*

**COUNSEL:** For FELDMAN & PINTO, Movant: ROSEMARY PINTO, FELDMAN & PINTO, PHILA-DELPHIA, PA.

For CANDACE J. CAPOFERRI, Plaintiff: CHRISTO-PHER D. WARREN, LEAD ATTORNEY, PHILA-DELPHIA, PA.

For ROBERT CAPOFERRI, PATRICIA GATTO, JO-SEPH W. CAPOFERRI, ALSO KNOWN AS JOSEPH R. CAPOFERRI, Defendants: CHARLES ALAN MA-TISON, LEAD ATTORNEY, NORTHFIELD, NJ.

**JUDGES:** Robert B. Kugler, United States District Judge.

**OPINION BY:** Robert B. Kugler

**OPINION**

Kugler, United States District Judge:

Before the Court is a motion by Defendants Robert Capoferi, Patricia Gatto, and Joseph Capoferi (collectively "Defendants") to dismiss Plaintiff Candace Capoferi's ("Plaintiff"), amended complaint. For the reasons provided below, the Court grants Defendants' motion to dismiss.

**I. BACKGROUND**

A detailed recounting of the factual background of this case is not necessary for the purpose of this motion. In short, Plaintiff and Defendant Robert Capoferri married on August 12, 1995 in Absecon, New Jersey. They resided as husband and wife in Hammonton, New Jersey.

1   In addition, the record reflects that Plaintiff has a New Jersey driver's license, issued in 2003. (Defs.' Br. Supp. Mot. to Dismiss at Ex. T.10.)

[*2]   Following allegations that Mr. Capoferi committed adultery in December 1998, Plaintiff moved out of the marital home and in with her mother, who lived in Hammonton, New Jersey. Plaintiff initiated divorce proceedings with the assistance of counsel. Shortly after Plaintiff filed the Complaint in the divorce proceeding, Mr. Capoferi allegedly requested that the parties attempt reconciliation. In February 1999, Plaintiff moved back into the marital home, and Mr. Capoferi allegedly told Plaintiff that he payed their respective divorce attorneys and informed them of the parties' reconciliation. Plaintiff alleges, among other things, that Mr. Capoferi did not actually tell the attorneys to cease divorce proceedings, and that Mr. Capoferi engaged in legal proceedings related to the divorce without Plaintiff's knowledge, culminating in the entry of a final divorce decree. Plaintiff alleges she was unaware of the divorce proceedings until 2001.

In July 1999, Plaintiff moved into a townhouse in Hammonton, New Jersey. In 2002, Plaintiff purchased, and moved into, a condominium in Philadelphia, Pennsylvania. She sold the townhouse in Hammonton, New Jersey in March 2005.

On September 24, 2004, Plaintiff [*3] filed a complaint in the United States District Court for the District of New Jersey. On November 12, 2004, Plaintiff filed an amended complaint, alleging fraud, conspiracy, and "accomplice liability" against all Defendants, and conversion against Defendant Robert Capoferi. Plaintiff pled subject matter jurisdiction pursuant to *28 U.S.C. § 1332*, stating that Plaintiff is a citizen of Pennsylvania and that all Defendants are citizens of New Jersey.

On December 15, 2006, Defendants moved to dismiss this action, alleging 1) the doctrine of equitable

estoppel precludes Plaintiff's action and 2) Plaintiff is not a resident of Pennsylvania, but is rather a resident of New Jersey, thereby destroying diversity. Plaintiff opposes the motion.

## II. Subject Matter Jurisdiction

Defendants allege that Plaintiff is not a citizen of Pennsylvania, but rather a citizen of New Jersey, thereby destroying diversity. Specifically, Defendants allege that Plaintiff only resides in Pennsylvania for the purpose of achieving complete diversity in this action, upon the advice of her attorney. Defendants allege that a close examination of the evidence demonstrates that Plaintiff [*4] remains a citizen of New Jersey, because she has a New Jersey drivers license, and because in 2005, she stated on a "Seller's Residency Form" that the home she sold in New Jersey was her "principal residence." Moreover, Defendants allege that Plaintiff's "course of conduct discloses a pattern of forum shopping" and that "her motive [for moving to Pennsylvania] is highly questionable."

The Court assumes Defendants move for dismissal under *Federal Rule of Civil Procedure 12(b)(1).* Under *Rule 12(b)(1),* a court may look beyond the pleadings when a party's challenge to subject matter jurisdiction is factual. *See, e.g., Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002).*

Several principles guide this Court's analysis of a party's citizenship for purposes of subject matter jurisdiction. *McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d. Cir. 2006).* The party asserting diversity jurisdiction bears the burden of proof. *McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).* A party generally meets this burden [*5] by proving diversity of citizenship by a preponderance of the evidence. *McNutt, 298 U.S. at 189.* Importantly, for this Court to have subject matter jurisdiction, diversity of citizenship must have existed at the time the Plaintiff filed her amended complaint on November 12, 2004. *See Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972)* ("It is the citizenship of the parties at the time the action is commenced which is controlling.").

"Citizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" *McCann, 458 F.3d at 286* (quoting *Vlandis v. Kline, 412 U.S. 441, 454, 93 S. Ct. 2230, 37 L. Ed. 2d 63 (1973)).* "In determining an individual's domicile, a court considers several factors, including 'declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business.'" *McCann, 458 F.3d at 286* (quoting *Krasnov, 465 F.2d at 1301).* A court may also consider other factors, including the "location of brokerage and bank accounts, [*6] location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *McCann, 458 F.3d at 286* (citing 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 3612 (3d ed.2005)). "An individual can change domicile instantly. To do so, [the individual must do two things]: '[h]e must take up residence at the new domicile, and he must intend to remain there.'" *McCann, 458 F.3d at 286* (quoting *Krasnov, 465 F.2d at 1300).* But "[a] domicile once acquired is presumed to continue until it is shown to have been changed." *Mitchell v. United States, 88 U.S. 350, 353, 22 L. Ed. 584, 10 Ct. Cl. 120 (1874).* "This principle gives rise to a presumption favoring established domicile over a new one." *See, e.g., McCann, 458 F.3d at 286-87.*

In the Third Circuit, when the party claiming a new domicile is also the party asserting diversity of citizenship, that party carries both the burden of production regarding domicile and the burden of persuasion regarding federal jurisdiction. *Id. at 289.* "[T]he effect of placing both burdens on one [*7] party is to require the party to initially carry the burden of production to rebut the presumption in favor of an established domicile. If and when the party does so, the presumption falls out of the case and the party is required to carry the burden of persuasion by proving that a change of domicile occurred, creating diversity of citizenship." *Id.*

In this case, given Plaintiff's prior citizenship in New Jersey, the Court recognizes a presumption that New Jersey is her established domicile. Therefore, Plaintiff first has the burden of production to rebut this presumption. In response to the motion to dismiss, Plaintiff submits nothing to support her assertion that she is a citizen of Pennsylvania. Plaintiff dedicates barely one page of her brief to discussing the jurisdictional issue, and submits only a portion of Plaintiff's deposition in which she states that she bought the Philadelphia condo in 2002, and that her mother resided in the New Jersey townhouse until Plaintiff sold it in 2005. Plaintiff relies on her mere residence in Pennsylvania, which under Third Circuit precedent, does not equate to domicile, and likewise, citizenship. Indeed, in her brief, Plaintiff is dismissive [*8] of the fact that Plaintiff still has a New Jersey driver's license, that she renewed in New Jersey in 2003, despite the fact that she resided in Pennsylvania since 2002. Renewing her license in New Jersey is hardly indicative of Plaintiff's intention to remain in, and become a citizen of, Pennsylvania. In addition, the Court notes that Plaintiff noted on documents related to the sale

2007 U.S. Dist. LEXIS 18220, *

of her Hammonton, New Jersey townhouse that as of March 31, 2005, after she commenced this action, she still considered the Hammonton address to be her "principle residence." Again, this is inconsistent with Plaintiff's testimony that in 2002, the condo in Philadelphia became her permanent residence. In addition, Plaintiff offers absolutely nothing to rebut the presumption of Plaintiff's New Jersey citizenship in the way of car registrations, voter registration, bank accounts, tax returns, or employment.

Controlling case law requires that courts afford a plaintiff a chance to show that a new domicile is not just manufactured for the purpose of litigation, usually via evidentiary hearing or otherwise. *Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320, 1323 (3d Cir. 1972).* However, an evidentiary [*9] hearing is not always required, "so long as the court has afforded the plaintiff notice and a fair opportunity to be heard." *Id. at 1323-24.* In this case, Plaintiff was aware of the motion to dismiss

based on lack of subject matter jurisdiction, and had an opportunity to submit deposition testimony, affidavits, or other documents to demonstrate that Plaintiff is a citizen of Pennsylvania. Plaintiff did not avail herself of that opportunity. Therefore, this Court finds that Plaintiff failed to rebut the presumption that she remains a citizen of New Jersey. As a result, this Court lacks subject matter jurisdiction because complete diversity does not exist, and Defendants' motion to dismiss is granted.

## III. CONCLUSION

For the reasons stated above, the Court grants Defendants' motion to dismiss for lack of subject matter jurisdiction.

Dated: *3/15/2007*

s/ Robert B. Kugler

United States District Judge

LEXSEE 2006 U.S. DIST. LEXIS 2466

**ROBERT T. FLOYD, Plaintiff, v. SATURN OF NEWARK, Defendant.**

**Civil Action No. 04-944-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 2466*

**January 24, 2006, Decided**

**PRIOR HISTORY:** *Floyd v. Saturn of Newark, 2005 U.S. Dist. LEXIS 13860 (D. Del., July 11, 2005)*

**COUNSEL:** [*1] Robert T. Floyd, Darby, Pennsylvania. Pro Se Plaintiff.

Danielle K. Yearick, Esquire, of TYBOUT, REDFEARN & PELL, Wilmington, Delaware. Attorney for Defendant.

**JUDGES:** Joseph J. Farnan Jr., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan Jr.

**OPINION**

*MEMORANDUM OPINION*

January 24, 2006

Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendant's Motion to Dismiss (D.I. 11). For the reasons discussed, the Motion will be granted.

**BACKGROUND**

**I. Factual Background**

In May 2001, Plaintiff leased a 2001 Saturn automobile from Defendant, a car dealership located in Newark, Delaware. Plaintiff entered into a lease agreement with General Motors Acceptance Corporation ("GMAC"), which financed the lease. Pursuant to the terms of the lease agreement, the lease was scheduled to terminate in August 2004, and Plaintiff would have an option to purchase the vehicle at that time. Plaintiff alleges that, in February 2004, he approached a sales agent at Defendant's place of business with regard to exercising his right to purchase the leased vehicle. The sales agent allegedly told Plaintiff that when there were five months remaining [*2] on the lease, GMAC would send Plaintiff a letter excusing the final five lease payments should Plaintiff purchase a new automobile. Plaintiff further alleges that the sales agent told him that he would not have to worry about paying for excess mileage on the leased vehicle.

On May 27, 2004, Plaintiff returned to Defendant's place of business allegedly because only four payments remained on the lease, yet Plaintiff had not received the letter from GMAC, which the sales agent had promised. During the May 27 visit, the sales agent convinced Plaintiff to purchase a gold 2004 Saturn automobile, which Plaintiff financed through a loan with Sun Trust Bank. Plaintiff turned in the leased 2001 Saturn to Defendant at that time. The sales agent then told Plaintiff that he may have to pay for excess mileage on the previously-leased vehicle.

GMAC subsequently billed Plaintiff $ 3,047 for excess mileage on the leased vehicle. On June 2, 2004, Plaintiff sent a letter to GMAC indicating his desire to reacquire the 2001 leased vehicle and to purchase it at the end of the lease term. On June 3, 2004, Plaintiff again wrote to GMAC stating his belief that he had a legal right to purchase the leased [*3] vehicle until August 2004. On June 10, 2004, GMAC allegedly sent a letter to Plaintiff stating that the vehicle had been sold.

On June 10, 2004, Plaintiff returned the gold 2004 automobile to Defendant. Plaintiff alleges that he was subsequently denied credit by other dealerships because the new car loan from Sun Trust Bank appeared on his credit report. On June 14, 2004, Plaintiff returned to Defendant's place of business and purchased a red 2004 Saturn automobile, again financing it through Sun Trust Bank. Plaintiff alleges that both Sun Trust loans ran concurrently until the loan for the gold 2004 Saturn "fell into late status," damaging Plaintiff's credit rating.

2006 U.S. Dist. LEXIS 2466, *

## II. Procedural History

On August 16, 2004, Plaintiff filed a *pro se* Complaint against GMAC and Saturn of Newark. (D.I. 1). The Court construes Plaintiff's Complaint to allege violations of the Truth in Lending Act, *15 U.S.C. § 1601 et seq.,* the Equal Credit Opportunity Act, *15 U.S.C. § 1691 et seq.,* breach of contract, and common law fraud.

GMAC filed a Motion To Dismiss on September 7, 2004 (D.I. 4) and a Renewed Motion To Dismiss on September 28, 2004 (D. [*4] I. 8). On July 11, 2005, the Court granted GMAC's Motion To Dismiss (D.I. 15), concluding that the Court lacked subject matter jurisdiction to hear the case.

Presently before the Court is Defendant Saturn of Newark's Motion To Dismiss (D.I. 11), filed April 26, 2005.

## PARTIES' CONTENTIONS

By its Motion, Defendant contends that this lawsuit should be dismissed pursuant to *Federal Rules of Civil Procedure 12(b)(4)* and *(5)* due to insufficiency of process and insufficiency of service of process. Specifically, Defendant contends that Plaintiff failed to perfect service within 120 days, that Plaintiff failed to serve a person authorized to receive service, and that Plaintiff failed to name the proper party. Alternatively, Defendant contends that the lawsuit should be dismissed pursuant to *Federal Rule of Civil Procedure 12(b)(1)* because the Court lacks subject matter jurisdiction as the amount in controversy is less than $ 75,000 and there is no federal question present in the case.

Plaintiff did not file a response to Defendant's Motion.

## DISCUSSION

### I. Legal Standard

A motion to dismiss [*5] under *Rule 12(b)(1)* challenges the jurisdiction of the court to address the merits of the plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Coxson v. Comm. of Pennsylvania, 935 F. Supp. 624, 626 (W.D. Pa. 1996)* (citations omitted). A motion to dismiss under 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. *See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).* The instant case presents a facial challenge because Defendant does not dispute the existence of the jurisdictional facts alleged in the Complaint. Therefore, the Court must accept the facts alleged in the Complaint as true, and draw all reasonable inferences in favor of Plaintiff. *Id.*

## II. Whether The Court Has Subject Matter Jurisdiction

### A. *Diversity of Citizenship*

A federal court has subject matter jurisdiction based on diversity of citizenship when "the matter in controversy exceeds the sum or value of $ 75,000, exclusive [*6] of interest and costs, and is between. . .citizens of different States." *28 U.S.C. § 1332 (2005).*

In his Complaint (D.I. 1), Plaintiff alleges that he is a citizen of Pennsylvania and that Defendant is a citizen of Delaware. Defendant does not dispute Plaintiff's allegations with regard to the parties' citizenship. Rather, Defendant contends that the Court lacks diversity jurisdiction because the amount in controversy is less than $ 75,000.

Accepting the facts alleged in the Complaint as true and drawing all reasonable inferences in favor of Plaintiff, as the Court must when analyzing a motion to dismiss, the Court concludes that Plaintiff has established diversity of citizenship among the parties. However, Plaintiff has not satisfied the jurisdictional amount in controversy. In determining the jurisdictional amount, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indemnification Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S. Ct. 586, 82 L. Ed. 845 (1938).* Dismissal is only appropriate if the court is certain that the jurisdictional amount cannot be met and the claims are insubstantial on their face. *In re LifeUSA Holding Inc., 242 F.3d 136, 143 (3d Cir. 2001).* [*7] Once the defendant challenges the plaintiff's allegations regarding the amount in controversy, the plaintiff must produce sufficient evidence to demonstrate that his or her claims meet the jurisdictional amount. *Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997).*

In this case, Plaintiff alleges that he is entitled to $ 20,000 in damages. (D.I. 7). Thus, Plaintiff has not satisfied the $ 75,000 threshold to support the exercise of diversity jurisdiction. Further, Plaintiff has not responded to Defendant's Motion To Dismiss, and thus, has failed to come forward with facts necessary to support diversity jurisdiction. Accordingly, the Court concludes that Plaintiff's allegations fail to support diversity jurisdiction.

### B. *Federal Question*

Pursuant to *28 U.S.C. § 1331,* federal courts have federal question jurisdiction over "cases in which a well-pleaded complaint establishes either that federal law cre-

ates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983).* [*8]

1. Truth in Lending Act

In his Complaint, Plaintiff alleges that "goods leased to consumers are covered by chapter 5 of the Truth in Lending Act and FTC's regulation M. . ." (D.I. 1 at 2).

The Consumer Leasing Act ("CLA") was enacted in 1976 as an amendment to the Truth in Lending Act ("TLA"), *15 U.S.C. § 1601*. The CLA extends the TLA's credit disclosure requirements to consumer leases; its primary purpose is to "assure a meaningful disclosure of the terms of leases. . .so as to enable the lessee to compare more readily the various lease terms available to him." *15 U.S.C. § 1601(b)*. Because lease financing had become an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate." *Id.* The CLA thus requires lessors of personal property to make certain disclosures "in a clear and conspicuous manner" upon entering into a lease. *15 U.S.C. § 1667a*. The CLA applies to all leases for the use of "personal property" having a term "exceeding four months" that have a "total contractual obligation [*9] not exceeding $ 25,000." *15 U.S.C. § 1667(1)*. The statute creates a private right of action against lessors who breach the disclosure requirements. *See 15 U.S.C. § 1667d; 15 U.S.C. § 1640*.

In passing the CLA, Congress also delegated to the Federal Reserve Board authority to "prescribe regulations to update and clarify the requirements and definitions applicable to lease disclosures" and to "publish model disclosure forms to facilitate compliance with the [statute's] requirements." *15 U.S.C. § 1667f(a)(1), (b)(1)*. Those regulations, collectively referred to as "Regulation M", are codified at *12 C.F.R. § 213*. Courts are to defer to these regulations and associated commentary when interpreting the TLA unless they are "demonstrably irrational." *See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980)*.

In pertinent part, the CLA requires a lessor to disclose in writing at the inception of a lease:

(4) The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable [*10] for the differential, if any, between the anticipated fair market value of the leased property and its appraised actual value at

the termination of the lease, if the lessee has such liability;

(5) A statement of the amount or method of determining the amount of any liabilities the lease imposes upon the lessee at the end of the term and whether or not the lessee has the option to purchase the leased property and at what price and time;

* * * *

(11) A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the term and the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination.

*15 U.S.C. § 1667a.*

Regulation M states in pertinent part that the lessor shall disclose the following information:

(d) Other charges. The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. . . .

(g) Early termination--

(1) Conditions and disclosure of charges. A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the [*11] lease term; and the amount or a description of the method for determining the amount of any penalty or other charge for early termination, which must be reasonable. . . .

(h) Maintenance and repair - . . .

(2) Wear and use standard. A statement of the lessor's standards for wear and use (if any), which must be reasonable; and

(3) Notice of wear and use standard. In a motor-vehicle lease, a notice regarding wear and use substantially similar to the following: "Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use." The notice shall also specify the amount or method for determining any charge for excess mileage.

(i) Purchase option. A statement of whether or not the lessee has the option to purchase the leased property, and:

(1) End of lease term. If at the end of the lease term, the purchase price; and

(2) During lease term. If prior to the end of the lease term, the purchase price or the method for determining the price and when the lessee may exercise this option.

*12 C.F.R. § 213.4.*

Viewing the Complaint (D.I. 1) and Plaintiff's subsequent "More Definite Statement" (D.I. 7) in light of the CLA and [*12] Regulation M, the Court concludes that Plaintiff has failed to state a claim pursuant to the TLA. Plaintiff alleges that he was discouraged from purchasing the 2001 Saturn, but nowhere does Plaintiff allege that Defendant failed to disclose terms in the lease agreement at the time the parties entered into the lease for the 2001 Saturn. In fact, Plaintiff alleges that the lease agreement in Paragraph 20 states that he had a contractual right to purchase the 2001 vehicle "only at the scheduled lease end." (D.I. 7 at 2). Similarly, Plaintiff does not allege that Defendant failed to disclose terms in either of the 2004 transactions.

In the Court's view, Plaintiff's claim with regard to the purchase of the 2001 vehicle is contractual in nature. Plaintiff has alleged no facts whereby relief could be granted pursuant to the TLA or Regulation M. Accordingly, the Court concludes that Plaintiff has not pleaded a federal question under the TLA.

2. Equal Credit Opportunity Act

The Equal Credit Opportunity Act, *15 U.S.C. § 1691 et seq.* ("ECOA"), makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction [*13] . . . on the basis of race, color, religion, national origin, sex or marital status, or age." *15 U.S.C. § 1691(a)*. To establish a *prima facie* case under the ECOA a Plaintiff must show that "(1) plaintiff was a member of a protected class; (2) plaintiff applied for credit from defendants; (3) plaintiff was qualified for the credit; and (4) despite qualification, plaintiff was denied credit." *In re Chiang, 385 F.3d 256, 259 (3d Cir. 2004)*.

It is not clear from Plaintiff's pleadings whether he is alleging an ECOA violation with regard to the lease agreement executed in 2001, his attempt to purchase the 2001 vehicle in 2004, or the loan transactions with Sun Trust Bank associated with the purchases from Defen-

dant in 2004. Therefore, the Court will analyze all three transactions.

With regard to the lease agreement entered into in 2001, the Court concludes that Plaintiff's claim is time barred. Affirmative claims under the ECOA are subject to a two-year statute of limitations. *See 15 U.S.C. § 1691e(f)*. Plaintiff signed the lease agreement in May 2001; he filed his Complaint more than three years later on August 16, 2004. Thus, [*14] the Court concludes that Plaintiff's ECOA claim with regard to the 2001 transaction is time barred.

With regard to the 2004 credit transactions, the Court concludes that no relief could be granted pursuant to the ECOA under any set of facts that could be proved consistent with Plaintiff's allegations. Plaintiff does not allege that Defendant denied him credit. To the contrary, Plaintiff alleges that the gold 2004 vehicle was financed on May 27, 2004 and that a second loan for the red 2004 vehicle was given on June 14, 2004. The only mention of a denial of credit in the pleadings is in reference to non-party automobile dealers that denied Plaintiff credit due to the presence on his credit report of the first Sun Trust Bank loan. Thus, the Court concludes that no relief could be granted pursuant to the ECOA with regard to the 2004 transactions.

With regard to Plaintiff's attempt to purchase the 2001 leased vehicle in 2004, the Court concludes that the ECOA is inapplicable. Plaintiff does not allege that he applied for any credit in 2004 with regard to the purchase of the 2001 vehicle or that he was denied credit based on his membership in a protected class. Rather, Plaintiff alleges [*15] that his 2001 contract was breached by selling the leased vehicle prior to the expiration of the lease agreement. Thus, the Court concludes that no relief could be granted pursuant to the ECOA.

Even assuming that Defendant is a creditor, the Court concludes that Plaintiff has not pleaded a claim under the ECOA. *See Costa v. Mauro Chevrolet, Inc., 390 F. Supp. 2d 720, 729 (N.D. Ill. 2005)*. Accordingly, the Court concludes that Plaintiff's Complaint does not include a federal controversy, and therefore, the Court lacks subject matter jurisdiction.

**CONCLUSION**

Because the Court concludes that it lacks subject matter jurisdiction, Defendant's Motion To Dismiss will be granted and this lawsuit will be dismissed pursuant to *Federal Rule of Civil Procedure 12(b)(1)*. [1]

1 Because the Court concludes that it lacks subject matter jurisdiction, the Court will not address Defendant's argument with regard to insuffi-

2006 U.S. Dist. LEXIS 2466, *

ciency of process and insufficiency of service of process.

[*16] An appropriate Order will be entered.

### ORDER

At Wilmington, this 24 day of January 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant's Motion To Dismiss (D.I. 11) is *GRANTED* and the case is *DISMISSED.*

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, Paul A. Bradley, do hereby certify that on this 2nd day of October 2007, a copy

of the Stihl Incorporated and Andreas Stihl AG & Co. KG's Motion to Dismiss Pursuant

to Rule 12(b)(1) was electronically served, via Pacer, upon all counsel of record.

**MARON MARVEL BRADLEY**
**& ANDERSON, P.A.**

By:     /s/ Paul A. Bradley
        Paul A. Bradley (DE ID No. 2156)
        1201 North Market Street, Suite 900
        P.O. Box 288
        Wilmington, DE  19899-0288
        (302) 425-5177
        Attorney for Defendants Andreas Stihl AG
        & Co. KG and Stihl Incorporated